Robert Farris-Olsen
MORRISON SHERWOOD WILSON DEOLA PLLP
401 N. Last Chance Gulch
Helena, MT 59601
Telephone: (406) 442-3261
Fax: (406) 443-7294

*ATTORNEY FOR PLAINTIFFS*

# IN THE UNITED STATE DISTRICT COURT
## DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| STEPHANIE ROMERO and DANIEL ROMERO,<br><br>Plaintiffs,<br><br>v.<br><br>ALLIANCE RV, LLC, d/b/a ALLIANCE RV; PIERCE BUILDINGS, LLP, d/b/a PIERCE RV; and JOHN DOES 1-10,<br><br>Defendants. | Cause No.:  CV-24-04-GF-BMM-JTJ<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Comes now, Plaintiffs Stephanie and Daniel Romeros (the "Romeros") and for their complaint against Alliance RV, LLC, d/b/a Alliance RV; Pierce Buildings, LLP, d/b/a Pierce RV; and John Does 1-10, state an allege:

## PARTIES

1.  The Romeros are residents of Great Falls, Cascade County, Montana.

2. Alliance RV, LLC, d/b/a Alliance RV ("Alliance RV") is a Recreational Vehicle and Trailer manufacturing company based in Indiana. It manufactures various lines of RVs and Trailers that are offered, and advertised for sale, in Montana at both Pierce RV in Great Falls, Montana, and Bish's RV in Bozeman Montana.

3. Pierce Buildings, LLP, d/b/a Pierce RV ("Pierce RV") operates, *inter alia* an RV sales and service center in Great Falls, Cascade County, Montana.

4. John Does 1-10 are individuals or entities that may be responsible for some or all of Plaintiffs' damages. The identity of these parties will be substituted upon discovery.

## JURISDICTION AND VENUE

5. Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1332 because Plaintiffs' and Alliance are citizens of different states and the amount in controversy is more than $75,000. The Court may exercise supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is appropriate in the Great Falls Division pursuant to Local Rule 3.2 and § 25-2-124, MCA.

## FACTS

7. The Romeros are presently residents of Great Falls, but before moving to Montana in 2022, they were residents of Texas.

8. While in Texas, Daniel was a member of the U.S. Air Force, and the Romeros owned a home.

9.      As Daniel neared retirement, the Romeros contemplated moving to Montana, and eventually decided to sell their home and buy an RV to travel from Texas to Montana.

10.     Ultimately, the Romeros decided to buy a fifth wheel trailer from Explore USA RV Supercenter in San Antonio Texas. After viewing a number of options, the Romeros purchased a new 2022 Valor, Model No. 42V13, VIN 7M5FV4539NA004423 (the "Valor").

11.     The total purchase price of the Valor was $109,290.20, which included $3,500 for a service contract, $1,215 for GAP insurance, $1,500 for Tire and Wheel Protection, and $1,500 for Roadside Assistance.

12.     The Romeros paid $5,000 down, and financed $104,290.20 over 240 months, with monthly payments of $674.71.

13.     At the time of purchase, the Valor was subject to a three year structural warranty and a one year limited base warranty. The structural warranty covered structural components including slide rooms and fiberglass walls. The limited base warranty covered defects in materials and/or workmanship.

14.     After purchasing the Valor, the Romeros quickly became aware of several problems that impacted the Valor. Initially, the Valor had numerous water leaks, the epoxy on the counters began discoloring, the fridge broke, and a gray tank valve malfunctioned because it was not installed properly.

15. A number of these problems could not be timely fixed, so the Romeros repaired the defects themselves, costing them both time and money.

16. In addition to these defects, once the Romeros loaded the RV to travel to Montana, they noticed that the main, living room, slide would not retract without being physically lifted and pushed in. This problem was first discovered by the Romeros in the summer of 2022.

17. They later learned that the slide defect was the result of problems with the rollers.

18. Once the Romeros arrived in Montana in or around October 2022, they observed that their bedroom slide had a crack in the fiberglass wall. They also learned that the bedroom slide was missing support brackets.

19. To repair these issues, they contacted Alliance and were advised to find a local repair shop. Following that advice, the Romeros found Pierce RV and brought the Valor in on November 8, 2022, for repairs.

20. During the November 8, 2023, drop off, Pierce RV's service manager advised the Romeros that Pierce RV could likely repair the defects, but may need to have Alliance repair the Valor because of the extent of the defects.

21. During that same conversation, the Romeros advised Pierce RV that they planned to sell the Valor as soon as the repairs were completed.

22. This conversation caused the Romeros to believe the Valor would be repaired promptly.

23. That belief turned out to be mis-founded. Over the next few months, the Romeros would call periodically to determine the status of the repairs. They were given contradictory information: both that it was being repaired and that it was waiting for repairs. In one call, Pierce RV stated that it was unaware of the location of the Valor.

24. As it turns out, the Valor was sitting in Pierce RV's lot. It stayed there for a number of months.

25. Come about July 2023, the Stephanie went to Pierce RV in person to try to resolve the issues. She was first told that Pierce RV was waiting for warrant approval from Alliance RV, but then was told the Valor was next in line for repairs. At all times, though, the Romeros were being informed that Pierce RV was actively repairing the Valor.

26. That turned out to be untrue, as nothing had been done and none of the repairs had been completed.

27. Stephanie then wrote an email to Pierce RV and Alliance RV expressing her need for information, and to figure out the status of the repairs and actions taken over the preceding eight months.

28. Alliance RV responded and explained that they had approved the warranty work. Pierce RV never responded.

29. In a separate, unrelated email about a month later, the service manager at Pierce RV advised Stephanie that the Valor was ready to pick up.

30. When the Romeros went to pick up the Valor, they asked to speak with the manager, and did speak to the manager.

31. During their conversation with manager, the Romeros were advised that Pierce RV attempted to have Alliance RV pick up the Valor to take it for repairs because it was physically too big for the fiberglass shop. Apparently, Alliance RV refused.

32. Pierce RV also attempted to have Alliance RV buy back the Valor, but Alliance RV also refused.

33. None of these communications between Pierce RV and Alliance RV were disclosed to the Romeros until they spoke with the manager.

34. These actions, and lack of communication, caused Stephanie to have an anxiety attack in the manager's office.

35. After the anxiety attack, the Pierce RV agreed to consign the Valor for the Romeros and give them $100,000 upon its sale.

36. To facilitate the sale, the Romeros needed to return the accessories and take photos, which they did a few days after their meeting with Pierce RV.

37. Upon returning, the Romeros observed that not all of the warranty repairs had been completed, including fixing faulty and yellowing counters.

38. And while the Romeros were returning accessories, they tried turning the air conditioning on, but it would not work. Upon inspection, Daniel learned that the battery had a low charge.

39. Daniel then inspected the batteries and found that Pierce had unhooked one the Valor's original batteries and replaced it with one of their own. Apparently, the Valor battery would not hold a charge.

40. Pierce RV then advised that they could not fix the battery issue quickly, but that the Valor would still likely sell without it, and that the cold weather could ruin the batteries.

41. The Valor was at Pierce RV or the fiberglass shop during Montana's coldest months.

42. To date the Valor has not been sold on consignment, and the Romeros are paying $674.71 a month for a trailer they cannot use and has not yet been fully repaired.

43. In all, the Valor has been in Montana for over a year, and the Romeros have been in contact with Alliance RV and Pierce RV attempting to resolve all of the warranty issues during that time frame.

44. Most recently, Pierce RV suggested that the Romeros drop the price of the trailer to about $70,000. The Romeros advised that this amount was insufficient to cover the remaining balance. In response, Pierce RV required the Romeros to pick up the trailer.

45. Upon returning home, the trailer's batteries were dead, which prevented the Romeros from removing the trailer from Mr. Romero's truck. Fortunately, Mr.

Romero was able to provide power through jumper cables and was able to remove the trailer from his truck.

46. As a result of Alliance RV and Pierce RV's actions, the Romeros have been injured. Those injuries include, but are not limited to, the payments on the Valor, the cost of insurance for the trailer, loss of value of the trailer, and emotional distress.

## CLAIMS AGAINST PIERCE RV

## COUNT I – NEGLIGENT REPAIR

47. The preceding paragraphs are realleged as though set forth in full hereunder.

48. Pierce RV owed the Romeros a duty to repair the Valor with due care and skill, and in a timely manner.

49. Pierce RV breached those duties by taking more than 10 months to repair the Valor, without fully repairing the defects.

50. Pierce RV breached caused the Romero's damages.

## COUNT II – MONTANA CONSUMER PROTECTION ACT

51. The preceding paragraphs are realleged as though set forth in full hereunder.

52. Plaintiffs are "consumers" under the Montana Consumer Protection Act ("MCPA") because they bought, and were using, the Valor for personal, family or household purposes.

53. Pierce RV was engaged in "trade or commerce" under the MCPA were providing vehicle repair services to the Romeros.

54. Pierce RV engaged in unfair and/or deceptive practices in violation of § 30-14-103, MCA, in violation of the MCPA. Those violations include, but are not limited to:

    a. Failing to communicate with the Romeros regarding the status of the repairs and the ability to make the repairs.

    b. Providing conflicting and inconsistent information.

    c. Failing to repair the Valor as promised.

    d. Failing to make any repairs to the Valor in a timely manner.

55. As a result of Pierce RV's actions, the Romeros suffered an ascertainable loss of property or money, including the loss of use of the Valor for over a year, and the payments that they made on the Valor during that time.

56. Pierce RV is therefore liable for its unfair and/or deceptive acts or practices under § 30-14-133, MCA, and the Romeros are entitled to treble damages, and attorney fees.

## CLAIMS AGAINST ALLIANCE RV

## COUNT IV – MAGNUSON-MOSS WARANTY ACT

57. Plaintiffs reallege the preceding paragraphs as though set forth in full hereunder.

58. Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

59. Alliance RV is a "supplier" and "warrantor" within the meaning of the Magnuson- Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

60. The Valor is a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

61. 15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written warranty.

62. The Valor's warranty included a three year limited structural and 1-year limited base warranty.

63. Alliance RV's Limited Warranty is a written warranty within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The Valor's implied warranty of merchantability is covered by 15 U.S.C. § 2301(7).

64. With respect to the Valor, the terms of Alliance RV's written warranty and implied warranty became part of the basis of the bargain between Alliance RV and the Romeros.

65. Alliance breached these warranties as described in more detail above.

66. At the time of sale of the Valor, Alliance RV knew, should have known, or was reckless in not knowing of the defects related to the main and bedroom slides as well as the other remaining defects.

67. The amount in controversy of the Romeros' individual claims meet or exceed the sum of $25.

68. As a direct and proximate result of Alliance RV's breaches of its Limited Warranty and the implied warranty of merchantability, the Romeros have sustained damages in an amount to be determined at trial.

69. The Romeros seek all damages permitted by law, including the diminution in value of the Valor, in an amount to be proven at trial.

### COUNT V – BREACH OF EXPRESS WARRANTY

70. The preceding paragraphs are realleged as though set forth in full hereunder.

71. The Romeros purchased the Valor subject to Alliance RV's express warranties.

72. As described above, Alliance RV breached the express warranties.

73. Alliance RV is therefore liable for its breaches.

### COUNT VI – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

74. The preceding paragraphs are realleged as though set forth in full hereunder.

75. The Romeros purchased the Valor subject to the implied warranty of merchantability.

76. As described above, Alliance RV breached the implied warranty of merchantability.

77. Alliance RV is therefore liable for its breaches.

### COUNT VII – TEXAS DECEPTIVE TRADE PRACTICES ACT

78. The preceding paragraphs are realleged as though set forth in full hereunder.

79. The Romeros are "consumers" under the Texas Deceptive Trade Practices Act ("TDTPA") because they purchased the valor.

80. Alliance RV is engaged in the conduct of "trade or commerce" because it manufactures and sells RVs and Camper Trailers to the public.

81. Alliance RV engaged in prohibited acts under the TDTPA. Those violations include, but are not limited to:

    a. Representing that the Valor was free from defects when it knew or should have known that at least the main and bedroom slides were defective.

    b. Breaching its express warranties.

    c. Breaching the implied warranty of merchantability.

    d. Failing to disclose the defects with the main slide and bedroom slide.

    e. Failing to timely repair or provide warranty service for the defects.

82. The Romeros relied on the above representations in purchasing the Valor.

83. The Romeros did not discover the defects until the spring/summer of 2022.

84. As a result of these violations of the TDTPA, the Romeros suffered damages including economic damages and mental anguish.

## JURY DEMAND

Pursuant to Rule 38, F. R. Civ. P., Plaintiffs hereby demands a jury trial.

WHEREFORE, Plaintiffs Stephanie Romero and Daniel Romero pray judgment against Alliance RV and Pierce RV as follows:

1. For all compensatory and statutory damages.;

2. For punitive damages;

3. For attorney's fees and cost; and

4. For such other and further equitable relief that the Court deems just and proper.

Dated this 3rd day of January 2024.

        MORRISON SHERWOOD WILSON DEOLA, PLLP

        BY:  /S/Robert Farris-Olsen
                Robert Farris-Olsen
                Attorney for Plaintiffs